# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **HERBERT GERARD JONES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | No. 14-1311-JWL |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff, proceeding pro se,[1] seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

**I.    Background**

---

[1]The court construes Plaintiff's pleadings and briefs liberally. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Travis v. Park City Mun. Corp., 565 F.3d 1252, 1254 (10th Cir. 2009). But, the court will not assume the role of advocate for him. Garrett v. Selby Conner Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005).

Plaintiff applied for DIB benefits, alleging disability beginning June 9, 2010. (R. 18, 147). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. Plaintiff claims the Administrative Law Judge (ALJ) erred in rejecting the opinion of Ms. Yourdon, the physician's assistant who treated him and provided an opinion regarding his limitations; failed to make specific findings regarding the physical and mental demands of Plaintiff's past relevant work; and failed to conduct a proper credibility analysis.[2]

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable

---

[2]Plaintiff also argues that the decision is not supported by substantial evidence because the ALJ simply listed all of the evidence in the record and concluded that Plaintiff is limited to a reduced range of light work without providing a narrative discussion, and failed to link the medical evidence to the RFC assessment. Plaintiff did not point to specific evidence relied upon by the ALJ which does not support her decision and did not explain why the record evidence cannot support the ALJ's decision, and the court is unable to follow Plaintiff's argument in this regard.

In any case, the court notes that the ALJ's narrative discussion in support of her RFC assessment appears at pages five through eight of the decision (R. 15-18) and that she explained her rationale sufficiently that the court finds no error in this regard.

mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner

assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The ALJ determined at step four that Plaintiff is able to perform his past relevant work.  Consequently she did not perform a step five analysis.

The court finds that Plaintiff has shown no error in the Commissioner's decision.  It addresses each error alleged in the order presented in Plaintiff's Brief.

## II.     Evaluation of the Opinion of Christie Yourdon

Plaintiff points out that the ALJ gave only "some weight" to Ms. Yourdon's opinion, including the opinion that Plaintiff must frequently elevate his legs during an 8-hour workday.  He notes the vocational expert's (VE) testimony that such a requirement would eliminate competitive employment.  He argues that the ALJ erroneously failed to

consider the factors for evaluating a physician's assistant's opinion in accordance with Social Security Ruling (SSR) 06-3p, that the ALJ erroneously relied upon her lay interpretation of the medical record, and that she should have recontacted Ms. Yourdon for clarification of her opinion.

The Commissioner argues that the ALJ could have accorded lesser weight to Ms. Yourdon's opinion merely because she is not an "acceptable medical source," but that the ALJ specifically explained the bases on which she discounted Ms. Yourdon's opinion, and the portions of that opinion which were credited and discounted. And, she argues that the ALJ's findings are supported by the record evidence.

### A.     Standard for Evaluating "Other" Medical Source Opinions

In accordance with the regulations, an "acceptable medical source" includes only certain named classes of professionals: licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513. Physician's assistants are among another group of health-care providers called "other" medical sources from whom the Commissioner will accept and use evidence showing the severity of a claimant's impairment(s) and how the impairment(s) affects claimant's ability to work. Id. § 404.1513(d). "Medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions." Id.

§ 404.1527(a)(2). A "treating source" must be an "acceptable medical source," Id. § 404.1502, and a medical opinion from a "treating source" may be given controlling weight in certain circumstances. 20 C.F.R. § 404.1527(c)(2).

Applying these regulations, a physician's assistant is an "other" medical source, not an "acceptable medical source" or a "treating source." Id. § 404.1513(d)(1). A physician's assistant's opinion is not, strictly speaking, a "medical opinion," and is never entitled to controlling weight.

Recognizing the reality that an increasing number of claimants have their medical care provided by health care providers who are not "acceptable medical sources"--nurse-practitioners, physician's assistants, social workers, and therapists, the Commissioner promulgated SSR 06-3p. West's Soc. Sec. Reporting Serv., Rulings 327-34 (Supp. 2014). In that ruling, the Commissioner noted:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

Id., Rulings, 330-31.

The ruling explains that where a treating source opinion is not given controlling weight, opinions of physician's assistants will be evaluated using the regulatory factors

for evaluating medical opinions. Id. at 331-32 (citing 20 C.F.R. § 404.1527). Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the provider is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

In the ruling, the Commissioner recognizes that "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." Id. at 332. The ruling explains that the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Id. at 333; see also, Frantz v. Astrue, 509 F.3d 1299, 1300 (10th Cir. 2007) (remanding for consideration of a nurse-practitioner's opinions in light of SSR 06-3p).

**B.     The ALJ's Findings**

The ALJ explained that she had "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSR . . . 06-3p" (R. 15), and thereafter she provided her evaluation of Ms. Yourdon's opinion:

> Christie Yourdon, the physician's assistant treating the claimant, provided an opinion in September 2012 (Exhibit 13F). This opinion indicated that the claimant had fatigue on exertion, shortness of breath with mild exercise, and peripheral edema (Exhibit 13F, p.2). However, these symptoms are generally mild or minimal in the claimant's treatment records. Consistent with this, Ms. Yourdon indicated the claimant has some limitations on lifting, sitting, and standing, and these are generally consistent or less restrictive than the limitations in the residual functional capacity. These limitations are only partially consistent with the claimant's treatment notes, although the claimant's documented symptoms do support some restriction in these areas. Furthermore, Ms. Yourdon indicated the claimant must "frequently" elevate his legs. However, as discussed above, there is no support for this in the record. As a result, her opinion received only some weight.

(R. 17).

### C.   Analysis

The court finds no error in the ALJ's evaluation of Ms. Yourdon's opinion. The record does not support Plaintiff's argument that the ALJ failed to consider the appropriate factors for evaluating a physician's assistant's opinion. First, the ALJ stated that she had considered the opinion evidence in accordance with 20 C.F.R. § 404.1527 and SSR 06-3p. The court's general practice is to take a lower tribunal at its word when it declares that it has considered a matter, and it sees no reason to depart from that practice here. Hackett, 395 F.3d at 1172-73. Moreover, the decision reveals that the ALJ considered certain specific factors. For example, she recognized that Ms. Yourdon

8

treated Plaintiff and she noted that Ms. Yourdon's opinion was not supported by her treatment records or by the other record evidence.  The court finds that the ALJ considered the appropriate regulatory factors.

Plaintiff's argument that the ALJ erroneously relied upon her own lay interpretation of the medical record rests upon an incorrect understanding of the duty of the ALJ.  Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004).  "And the ALJ's RFC assessment is an administrative, rather than a medical determination." McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-5p, 1996 WL 374183, at *5 (July 1996)).  Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. § 404.1545(a).  Moreover, the final responsibility for determining RFC rests with the Commissioner.  20 C.F.R. §§ 404.1527(e)(2), 404.1546.  It is the ALJ's duty to evaluate the opinions in the record, and the fact that she discounts a particular opinion of a medical source, does not constitute substituting her lay opinion for the medical source's opinion, and, if supported by record evidence, it is not error.

Plaintiff's argument that the ALJ should have recontacted Ms. Yourdon for clarification of her opinions is likewise unavailing.  The regulations were changed nearly a year before the hearing in this case, giving adjudicators greater flexibility in obtaining

information necessary to make a disability determination, and they no longer require that an ALJ first recontact a treating source to resolve an inconsistency or insufficiency in the evidence that source provides to the Social Security Administration.  How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651 (Feb. 23, 2012) (effective March 26, 2012).  Moreover, Plaintiff has shown no basis to recontact Ms. Yourdon under the standard applicable before March 26, 2012.  As Plaintiff asserts, the former regulation required a medical source to be recontacted when the report from that medical source contains a conflict or ambiguity that must be resolved, does not appear to be based on acceptable clinical and laboratory diagnostic techniques, and does not contain all of the information necessary to a decision.  (Pl. Br. 8) (citing 20 C.F.R. § 404.1512(e)(1)).[3]

Here, the ALJ did not suggest in any way that Ms. Yourdon's opinion is not based on acceptable clinical and laboratory diagnostic techniques or that she omitted certain information necessary to a decision.  And Plaintiff does not point to such insufficiency.  Moreover, Plaintiff does not point out a conflict or ambiguity in Ms. Yourdon's report requiring resolution, and the ALJ did not recognize such a deficiency in the report.  The mere fact that an ALJ discounted the opinion of a medical source has never been sufficient to require that she recontact the medical source, and it certainly does not have that effect under the controlling regulations when Plaintiff's case was decided.  Were it

---

[3]Plaintiff cites 20 C.F.R. § 416.912(e)(1), but that regulation applies only to applications for Supplemental Security Income (SSI) benefits, and Plaintiff applied for DIB benefits.  20 C.F.R. § 404.1512(e)(1) applies to DIB cases such as this, and is identical in every relevant respect to 20 C.F.R. § 416.912(e)(1).

otherwise, the meticulous and somewhat cumbersome system used by the agency would become virtually unworkable.  As quoted above, the ALJ explained which portions of Ms. Yourdon's opinion she accepted, and which portions she discounted, and why.  Her reasons are supported by the record evidence, and Plaintiff has not shown otherwise.  The court finds no error in the evaluation of Ms. Yourdon's opinion.

Finally, the court notes that in his Reply Brief, Plaintiff argues that Ms. Yourdon is a member of Dr. Alvarez's office, Dr. Alvarez is an "acceptable medical source," and that Ms. Yourdon is "arguably" speaking for Dr. Alvarez.  (Reply 2).  While it may be true that Ms. Yourdon is subject to Dr. Alvarez's medical supervision, the court does not find that the opinion at issue is that of Dr. Alvarez, or that Ms. Yourdon is speaking for Dr. Alvarez.  In the form which Ms. Yourdon filled out, there is a space titled "Physician/Medical Source Name:" and Ms. Yourdon inserted "Dr. Alvarez/Christie Yourdon, PA-C."  (R. 462).  Clearly, this indicates that Dr. Alvarez is Plaintiff's physician, and that Ms. Yourdon is the clinical physician assistant who is the medical source completing the form.  At the end of the form it is signed by Ms. Yourdon.  There is simply no indication that the form contains Dr. Alvarez's opinion, or that Ms. Yourdon had the authority to, or was attempting to, speak for Dr. Alvarez in completing the form.  Moreover, Dr. Alvarez provided his own opinion in a "Medical Source Statement - Physical."  (R. 467-68)

**III.    The ALJ's Step Four Finding**

In three sentences, Plaintiff claims that the ALJ failed to make specific findings at phase two and phase three of her step four analysis, and merely accepted the analysis which took place entirely in the VE's head. (Pl. Br. 9). The Commissioner argues both that the ALJ properly relied upon the job descriptions in the Dictionary of Occupational Titles (DOT), and that any error is harmless because Plaintiff has not shown that he was prejudiced. In his Reply Brief, Plaintiff argues that he was harmed by the ALJ's error, and that his past relevant work as a program worker now requires a college degree which he does not possess. (Reply 3).

### A.     Step Four Standard for Evaluating Past Relevant Work

At step four of the sequential evaluation process, the ALJ is required to make specific findings in three phases. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996) (citing SSR 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings 809 (1983)). In phase one, "the ALJ should first assess the nature and extent of [the claimant's] physical limitations." Winfrey, 92 F.3d at 1023. In phase two, the ALJ must "make findings regarding the physical and mental demands of the claimant's past relevant work." Winfrey, 92 F.3d at 1024. Finally, in phase three, the ALJ must determine "whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." Id., 92 F.3d at 1023. These findings are to be made on the record by the ALJ. Id. at 1025; see also, SSR 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings, at 813 ("decision must contain . . . specific findings of fact" regarding each of the three phases).

An ALJ is under no obligation to seek vocational expert testimony when she decides a case at step four. Kepler v. Chater, 68 F.3d 387, 392 (10th Cir. 1995) (citing Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)). The Tenth Circuit has explained, however, that an ALJ may properly rely upon vocational expert (VE) testimony in making her findings at phase two and phase three of step four. Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003). The ALJ may not delegate the analysis to the VE. She may, however, rely on information supplied by the VE regarding the demands of plaintiff's past relevant work and whether a person with plaintiff's RFC could meet those demands, and she may accept the VE's opinions. Doyal, 331 F.3d at 761. The critical distinction is whether the ALJ relied upon the VE testimony in making the findings or whether the ALJ delegated the findings to the VE. Id. 331 F.3d at 761. Where the ALJ makes the phase two and phase three findings, and merely cites the VE testimony approvingly in support, she has properly relied upon the VE testimony. Id.

**B.     The ALJ's Findings**

At step four of the sequential process, the ALJ determined that Plaintiff is able to perform his past relevant work as a program worker. (R. 18). She noted that this work had been performed within the past fifteen years and met the recency requirement. Id. She cited the VE's testimony that the job was performed at the specific vocational preparation (SVP) level of three, requiring three months to learn, and found that Plaintiff performed the job for more than a year at the gainful activity level, thus learning the essential duties. (R. 18-19). She explained her analysis:

13

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant was able to perform it as actually and generally performed. The vocational expert indicated the claimant could perform this job under the residual functional capacity found in this case. This corresponds with the Dictionary of Occupational Titles, which indicates this job is performed at the light exertional level, with no overhead reaching of [sic] use of foot controls. Although the Dictionary of Occupational Titles does not provide specific information on alternation of positions, nothing in the Dictionary of Occupational Titles contradicts the vocational expert's testimony on this issue. Furthermore, the requirements of this job, both as indicated in the Dictionary of Occupational Titles and as described in the claimant's testimony, appear compatible with said limitation on alternation. Therefore, the undersigned finds the vocational expert's testimony on this issue credible.

(R.19).

### C. Analysis

Contrary to Plaintiff's claim, the phase two and three analysis did not take place in the VE's head, and the ALJ made specific findings regarding the demands of Plaintiff's past work as a program worker. As the decision reveals, the ALJ found that Plaintiff's past work had mental demands of SVP3, and that physically it was performed at the light exertion level, involved no overhead reaching or use of foot controls, and allowed Plaintiff to alternate positions. (R. 18-19). Although the ALJ relied upon the VE testimony in reaching her conclusions in this regard, the analysis did not merely take place in the VE's head. As quoted above, the ALJ explained her analysis, and further explained that she accepted the VE's testimony in this regard because she found it credible. This is not error.

### IV. The ALJ's Credibility Determination

In his final argument, Plaintiff claims the ALJ failed to conduct a proper credibility analysis because she disregarded Plaintiff's statements regarding his limitations and she did not "pursue or request any other medical evidence relating to Jones' pacemaker restrictions." (Pl. Brief 9-10). Plaintiff included with his Brief an "Appendix, Exhibit 1" which includes treatment notes provided by Dr. Alvin Wolfe, dated in November and December, 1997. (Pl. Br. 11-12). The Commissioner argues that the ALJ provided several valid reasons to discount the credibility of Plaintiff's allegations, the credibility determination was "closely and affirmatively linked to substantial record evidence," and should be affirmed. (Comm'r Br. 9-11) (quoting Wall, 561 F.3d at 1070).

### A.     Standard for Evaluating Credibility

The framework for a proper credibility analysis is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). An ALJ must consider (1) whether the claimant has established a symptom-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's symptoms are in fact disabling. See, Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the Luna framework). The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating credibility:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms;

measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii). The court has recognized a non-exhaustive list of factors which overlap and expand upon the factors promulgated by the Commissioner. Luna, 834 F.2d at 165-66. These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler, 68 F.3d at 391 (quoting Thompson, 987 F.2d at 1489).

The court's review of an ALJ's credibility determination is deferential. Credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson, 987 F.2d at ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

**B.     The ALJ's Credibility Determination**

The ALJ explained the regulatory standard which she applied in evaluating the credibility of Plaintiff's allegation of symptoms, and that standard is consistent with the standard explained above. (R. 15-16). She concluded that Plaintiff's allegations are "not entirely credible," because in his testimony and submissions to the agency he "generally reports symptoms . . . in excess of those described in [his] treatment records," because he "reports problems . . . which he does not report to his providers," and because his allegations are not supported by the medical records. (R. 16).

**C.     Analysis**

The ALJ's reasons for discounting the credibility of Plaintiff's allegations are supported by the record evidence, and Plaintiff does not argue otherwise. Rather, he argues that the ALJ "improperly disregarded" his statements. (Pl. Br. 9-10). While it is true that the ALJ discounted Plaintiff's statements, it was not improper to do so. She stated her reasons for doing so, and those reasons are supported by record evidence. The purpose of a credibility determination is to decide whether a claimant's allegations will be accepted completely, and it is insufficient for the claimant to argue merely that the ALJ disregarded those statements.

The remaining basis for Plaintiff's credibility argument is treatment records from December 1997 which Plaintiff argues demonstrate restrictions consistent with his allegations which are due to his pacemaker. As Plaintiff argues, in December, 1997 Dr. Wolfe released him to return to work, but restricted him to no heights, with restricted

17

stooping, bending, lifting, and working overhead. (Pl. Br. 12). There are several problems with accepting Plaintiff's argument. First, the court's evaluation of a decision of the Commissioner is limited to the record evidence before the Commissioner. Lax, 489 F.3d at 1084; White, 287 F.3d at 905; 42 U.S.C. § 405(g) (sentence four). Therefore, the court may not consider evidence not in the record before the Commissioner.

Sentence six of 42 U.S.C. § 405(g) provides that the court "may at any time order additional evidence to be taken before the [Commissioner of Social Security], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record." Heimerman v. Chater, 939 F. Supp. 832, 833 (D. Kan. 1996). Dr. Wolfe's treatment note is "new evidence" in the sense that it is not cumulative or duplicative of evidence already in the administrative record. Id. It is material in the sense that it potentially relates to the time period at issue here, between June 9, 2010 (Plaintiff's alleged disability onset date) and January 25, 2013 (the date of the decision), and in the sense that it offers a possibility of changing the decision. Id. at 833-34. However, Plaintiff has not shown good cause for the failure to obtain and present the evidence at the ALJ hearing in this case. Id. at 834 (citing Tirado v. Bowen, 842 F.2d 595, 597 (2nd Cir. 1988)); see also, Wilson, 602 F.3d at 1149. Although Plaintiff appears pro se before this court, before the Commissioner he was represented by an attorney. (R. 11, 25). It has long been recognized that an "ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." Wilson, at 1149

(quoting Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997)). Counsel did not present Dr. Wolfe's records in the proceedings before the Commissioner, and Plaintiff has not shown good cause for that failure.

Moreover, the ALJ accounted for Plaintiff's pacemaker in his RFC assessment. He determined that Plaintiff cannot engage in overhead lifting with his left arm because of his testimony and medical records indicating some movement of the pacemaker. (R. 17). Plaintiff's pacemaker was replaced in June, 2010 at the time of his alleged disability onset, and the ALJ thoroughly considered and discussed the treatment records at that time. (R. 16-17). Plaintiff points to no limitations his physicians imposed at that time which have been erroneously omitted from the RFC assessed. The records and treatment notes of Dr. Wolfe relate to the first pacemaker, which was replaced in June 2010, and there is no indication current limitations remain the same as those suggested over twelve years earlier. Finally, Plaintiff worked at significant gainful activity level as a program worker after Dr. Wolfe provided a release to work in December 1997, and he did not allege an onset of disability until June 2010, more than twelve years later.

Plaintiff has not shown error in the ALJ's credibility determination, or in the failure to consider Dr. Wolfe's limitations, and has shown no error in the ALJ's decision.

As a final matter, the court notes that in his Reply Brief Plaintiff objected to the Commissioner's use of unpublished opinions in her Brief, and requested "that all references to unpublished opinions in Defendant's brief be disregarded or stricken." (Reply 2). The court declines to do so.

In accordance with the local rules of this court, there is no prohibition on the citation to unpublished opinions, and the rules require only that if such a decision is unavailable electronically a copy must be attached as an exhibit to the brief, and a decision which is available electronically must be furnished to opposing parties "only upon request." D. Kan. R. 7.6(c). Moreover, the Tenth Circuit Rules provide that unpublished decisions are not precedential, but may be cited for their persuasive value, even if issued before January 1, 2007. 10th Cir. R. 32.1.

To the extent that the Commissioner cited to unpublished opinions in her Brief, the court has considered them only for their persuasive value, and has not cited any of them in its decision of this matter. However, the court has relied upon two unpublished decision of the Tenth Circuit, McDonald, 492 F. App'x at 885; and Dixon, 1999 WL 651389, at **2, to provide further explanation of the duty of an ALJ in assessing RFC.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 22nd day of July 2015, at Kansas City, Kansas.

        s:/ John W. Lungstrum
        **John W. Lungstrum**
        **United States District Judge**